A92A1447. ARDEX, LTD. v. BRIGHTON HOMES, INC.
(426 SE2d 200)

SOGNIER, Chief Judge.

Brighton Homes, Inc. brought suit against Ardex, Ltd. seeking either specific performance of two real estate sales contracts or refund of its earnest money and an award of damages. One of the contracts was closed after the suit was filed, but the trial court later ordered rescission of the sale because of a unilateral mistake by Brighton. The court also granted summary judgment to Ardex on the issue of specific performance of the other contract, and the case then proceeded to nonjury trial on the issue of Brighton's entitlement to damages. The trial court entered judgment for Brighton, and Ardex appeals.

In January 1988 appellant, a residential real estate developer, owned several tracts of land in Cobb County, a portion of which had been developed into subdivision lots. Appellant decided to sell certain tracts by auction and engaged Hudson & Marshall, Inc. to conduct the auction on March 1. Appellee successfully bid on two tracts, subdivided lots 8 and 9 in Paddocks West Subdivision, and 22.5 acres of raw land in the same subdivision. The purchase price for the 22.5 acre tract was set at $196,875, and appellee deposited earnest money of $39,375 with Hudson & Marshall for that purchase. For lots 8 and 9, the parties agreed to a price of $20,500 and an earnest money deposit of $4,100. The contracts provided for a closing date of April 1, 1988 (although the contracts did not state that time was of the essence), set a deadline for title objections, and required appellant to tender marketable title.

Thereafter, appellee timely notified appellant of its objections to title, the relevant objection for this appeal being a claim of lien filed by Atlanta Construction Enterprises, Inc. (ACE) on February 26, 1988. Appellee's escrow agent and the agent's closing attorney examined the lien claim, compared its property description to the plat of the property on record at the courthouse, and concluded the lien attached to both parcels appellee had contracted to purchase. As a result, appellee requested that the lien objection be satisfied prior to closing. Appellant, however, contended the claim of lien attached only to lots 8 and 9. Appellant and the closing attorney orally agreed to extend the closing deadline to April 5, 1988, but the sales did not

close by that date. Although appellant's president testified at trial that he had arranged to bond off the claim of lien, it is undisputed that no lien bond was ever obtained and the claim of lien was not satisfied or removed by April 5. Appellee's president testified that appellee had the necessary funds available at all times, and the president of appellee's escrow agent testified that the sales could have been closed on one hour's notice if the lien objection had been satisfied.

Subsequent to April 5, 1988, appellant refused to close and sought to collect the earnest money from Hudson & Marshall. In response, appellee filed this action on April 23. Three days later, appellant filed an action to quiet title against ACE, alleging that the claim of lien constituted a cloud on the title of both parcels under contract to appellee. The claim of lien was satisfied of record on January 17, 1989.

1. Appellant's contention that the trial court did not enter adequate findings of fact and conclusions of law as required by OCGA § 9-11-52 is without merit. The statute provides that in nonjury trials, "the court *shall* upon request of any party made *prior* to such ruling, find the facts specially and shall state separately its conclusions of law." (Emphasis supplied.) Id. at (a). "Upon motion made . . . after entry of judgment, the court *may* make or amend its findings or make additional findings and *may* amend the judgment accordingly." (Emphasis supplied.) Id. at (c).

The record reveals no request for findings *prior* to entry of judgment; consequently, any entry of findings and conclusions was left to the trial court's discretion. See id. at (a), (c). After the court entered judgment for appellee, appellant moved the court pursuant to paragraph (c) to include additional findings and conclusions. The court then elected to make additional findings of fact and conclusions of law in a consent order agreed to in writing by appellant and appellee. Appellant thus approved the content of the amended order and cannot now complain of the court's failure to include additional findings of fact and conclusions of law. See *Rude v. Rude*, 241 Ga. 454, 455 (1) (246 SE2d 311) (1978); see generally *Hornsby v. Odum*, 198 Ga. App. 472, 473 (2) (402 SE2d 56) (1991) (" ' "One cannot complain of a judgment, order, or ruling that his own procedure or conduct aided in causing." (Cit.)' [Cit.]").

2. Contrary to appellant's first enumeration of error, the trial court did not find that the ACE lien claim attached to the 22.5 acre tract. Instead, the court found only that throughout the relevant time period, appellee "maintained its position that the Claim of Lien was a cloud upon the title to both the 22.5 acre tract and lots 8 and 9." However, even assuming that such a finding can be inferred from the court's order, the finding is not in error. The issue before the court

was not whether the claim of lien did attach to the 22.5 acre tract as a matter of law, but whether the claim constituted a cloud on the title of both parcels sufficient to authorize appellee to require that it be removed before closing either contract.

A purchaser's " 'right to an indisputable title, clear of defects and encumbrances, does not depend upon the agreement of the parties, but is given by law. . . [.] A good title means not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser or mortgaged to a person of reasonable prudence as a security for the loan of money.' (Emphasis omitted.) [Cit.]" *Atlanta Title &c. Co. v. Erickson*, 67 Ga. App. 891, 894 (21 SE2d 548) (1942). Given the testimony of the closing attorney, an experienced real estate lawyer, that the claim of lien was a cloud on the title of both parcels, see id., and considering appellant's admission in its suit against ACE that the claim of lien was filed against both parcels, see *Wheeler v. Friendly Motors*, 138 Ga. App. 260, 261 (226 SE2d 95) (1976) (admission by party in pleadings in one case on a matter relevant to a second case are admissible against the party in the second case), some evidence was presented from which the court could have concluded that appellee was authorized to consider the titles to both parcels unmarketable. Even assuming, without deciding, that the survey referenced in the property description of the lien claim would have shown that the 22.5 acre tract was not included in the claim, that survey was not of record and thus did not provide notice to third parties searching the title. Accordingly, the court was authorized to find that the claim of lien rendered both parcels unmarketable and that appellee rightfully refused to close on either contract until the lien claim was removed or satisfied. Because there was some evidence to support this finding, it was not clearly erroneous, and thus we will not set it aside. See generally *Commonwealth Fin. Corp. v. Sherrill*, 197 Ga. App. 403, 404 (398 SE2d 438) (1990).

3. Appellant next contends the trial court erred by awarding "speculative profits" of $80,987 for breach of contract damages. "The measure of damages for breach of a contract to sell land is the difference between the contract price and the fair market value at the time of the breach. [Cit.]" *Hood v. Hallman*, 143 Ga. App. 507, 508 (3) (239 SE2d 194) (1977). The parties agreed to contract prices totaling $219,375 for the two parcels. At trial, appellee's president, an experienced real estate developer, testified that auction sale prices are generally 75 to 80 percent of market value and opined that the property was worth $290,000 in March 1988 ($260,000 for the 22.5 acre tract and $30,000 for lots 8 and 9). He also testified that in 1988 developed lots in the subdivision had a market value of at least $13,500 and a development cost of $7,200. Under this calculation, the 40 undeveloped lots in the 22.5 acre tract had a value of $252,000. Appellant's

president testified that appellant paid $326,250 for the subject property in June 1987, and no evidence was offered to indicate that the value declined between that time and the breach of contract in 1988. Accordingly, the damage award was within the range of competent evidence and was not based on speculation. See *Prudential Timber &c. Co. v. Collins*, 144 Ga. App. 849, 852 (3) (243 SE2d 80) (1978).

4. Having determined that the damage award was supported by some evidence, we hold that appellant's contention that the trial court improperly admitted evidence of the value of the subject property in 1991 presents nothing for review. Even assuming, without deciding, that admission of the 1991 valuation evidence was error, no harm can be shown because, as we held in Division 3, other evidence was presented to support the award of damages.

5. Finally, appellant maintains the trial court erred by awarding breach of contract damages as to lots 8 and 9. After the claim of lien was cleared of record, appellant tendered lots 8 and 9 to appellee and the sale closed in February 1989. Because of a unilateral mistake by appellee's escrow agent which caused appellee to pay, and appellant to retain, a sum in excess of the contract price, the court ordered the contract rescinded, and appellant repurchased the property from appellee. Thereafter, appellee amended its complaint to include a claim alleging damages for breach of the contract for lots 8 and 9. In the judgment rendered after the nonjury trial, the court ordered return of the earnest money appellant held for both contracts and also awarded breach of contract damages.

"[R]escission is a remedy in which neither party is held liable in damages for breach of the contract, the contract is treated as no longer binding as between the parties, and the court proceeds to restore the status quo. [Cits.]" *Martin v. Rollins, Inc.*, 238 Ga. 119, 120 (1) (231 SE2d 751) (1977). Return to appellee of the earnest money paid for lots 8 and 9 was required to restore the status quo, but any award of damages for breach of that contract was inconsistent with the previous order of rescission. Accordingly, the court's award of "benefit of the bargain damages" is vacated with direction that the portion attributable to the contract for lots 8 and 9 be written off.

6. Appellee's motion for damages for frivolous appeal is denied.

*Judgment affirmed in part; vacated and remanded in part. McMurray, P. J., and Cooper, J., concur.*

DECIDED NOVEMBER 23, 1992 —
RECONSIDERATION DENIED DECEMBER 4, 1992 ▮

*Lipshutz, Greenblatt & King, Randall M. Lipshutz, Bruce J. Landau*, for appellant.

Long, Aldridge & Norman, Phillip A. Bradley, Steven J. Lawrence, for appellee.